FILED
SEP 0 6 2006

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| JOHN PAUL WINTERS, | * | CIV 05-4020 |
| Petitioner, | * | |
| -vs- | * | REPORT and RECOMMENDATION |
| DOUGLAS WEBER, Warden, SD State Penitentiary, | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Petitioner, John Paul Winters, an inmate at the South Dakota State Penitentiary, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an Answer asserting the state courts correctly dismissed Petitioner's habeas claims. Also pending is Petitioner's second Motion for Leave To Proceed In Forma Pauperis. (Doc. 18). The $5.00 filing has already been paid (Doc. 11); Petitioner's second Motion to proceed IFP will therefore be DENIED as moot.

## JURISDICTION

Petitioner was convicted in Minnehaha County, South Dakota, and is currently in custody in South Dakota pursuant to a judgment of a South Dakota state court. The pending matter is therefore properly before this court pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

On September 18, 2000, in Minnehaha County, South Dakota, Petitioner was charged with two counts of aggravated assault and one count of grand theft. Habitual Offender charges were also filed. See Doc. 16, Ex. A. On February 9, 2001, a jury convicted him of both aggravated assault counts. The jury could not reach a verdict on the grand theft charge, and it was ultimately dismissed. JT 482-83, HT, 16.[1] Petitioner thereafter admitted the habitual offender charges. Doc. 16, Ex. A.

---

[1] References to the transcript of the jury trial will be "JT" followed by the appropriate page number. References to the transcript of the state habeas hearing will be by "HT" followed by the appropriate page number. References to the transcript of the motions hearing held on February 2,

On June 4, 2001, Petitioner was sentenced to five years imprisonment for the first aggravated assault count and fifteen years for the second aggravated assault count, with the sentences running consecutively. Doc. 16, Ex. A & B. Petitioner appealed his conviction to the South Dakota Supreme Court. The South Dakota Supreme Court summarily affirmed the conviction on February 19, 2002. Doc. 16, Ex. E, State v. Winters, 703 N.W.2d 172 (S.D. 2002) (unpublished).

Petitioner filed a pro se state habeas corpus application on August 27, 2002. See Civ. No. 02-2001, Minnehaha County, Second Judicial Circuit. Appointed counsel filed an amended state habeas application March 18, 2004. The state filed a response, and a hearing was held on June 2, 2004, before the Honorable Gene Paul Kean, Circuit Court Judge for the Second Judicial Circuit, Minnehaha County, South Dakota. Judge Kean issued a letter decision on June 3, 2004, denying the application. Judge Kean denied Petitioner's motion for certificate of probable cause on December 17, 2004. The South Dakota Supreme Court denied Petitioner's motion for certificate of probable cause on January 21, 2005. Petitioner filed his federal habeas petition on February 9, 2005.

## FACTUAL BACKGROUND

The incident which formed the basis for Petitioner's conviction occurred in the late evening/early morning of September 1 and 2, 2000. JT 155. Petitioner came from San Diego, California a few weeks earlier to live with his aunt and uncle, George ("Dick") and Jackie Cole in rural Dell Rapids, South Dakota. JT 152, 381. Petitioner, Dick Cole, and Dick Cole's brother-in-law, Ron McPherson, went to a car show in Dell Rapids to show Dick Cole's vintage pick-up on the evening of September 1. JT 154-59. The men consumed beer throughout the evening. JT 159, 246-49, 385-387. They left the car show at approximately 11:00 p.m., and stopped at a Dell Rapids bar/pool hall on the way home. JT 159-60, 249, 387. There they drank more beer and played pool. JT 160, 249-50, 387-88. They left the bar at approximately midnight. JT 250.

The men returned to the Cole acreage and put the pick-up away in the pole barn. JT 162, 250, 388. They left the keys in the truck. JT 162. They remained outside the pole barn in the yard, sitting in lawn chairs and listening to music. JT 163, 250, 388-89. Petitioner and McPherson got into a heated discussion about rap music, violence, and appropriate behavior. JT 164-167, 251-

---

2001, will be by "MT" followed by the appropriate page number.

253, 389-392. Mr. Cole interceded. JT 167, 253, 392. Petitioner struck Mr. Cole several times. JT 167-68, 253-55. At trial, Petitioner claimed Mr. Cole initiated the physical confrontation, and that he (Petitioner) only defended himself. JT 393-94.

Mr. Cole, Jackie Cole, and Ron McPherson all testified that Petitioner possessed and fired a gun during the altercation with Mr. Cole and Mr. McPherson. JT 171, 274-279, 203-205. Petitioner denied possessing or using a gun during the altercation. JT 409. No gun was ever recovered, but the day after the incident, one of Dick and Jackie Cole's daughters found a bullet in the Coles' driveway which was consistent with a .44 caliber handgun–the same type of handgun which was missing from the Coles' home. JT 174, 298-302, 211-212, 331.

Dick Cole indicated he was going to call the police, and told Petitioner to leave. JT 171, 397. Petitioner explained he thought he would go to jail if the police became involved, because there were warrants for his arrest in California. JT 399. Petitioner took Dick Cole's vintage pickup and drove to Sioux Falls, where he was stopped and arrested near the bus station. JT 338-341, 397-407. Petitioner was booked into the Minnehaha County Jail during the early morning hours of September 2, 2000. JT 370-72. No tests were performed on his hands to determine whether he had recently fired a weapon. JT 374-75.

Petitioner's criminal trial was held on February 7-9, 2001. Petitioner consistently denied possessing or firing a gun during the altercation with Cole and McPherson. Because no gun was ever found and no gunpowder residue tests had been performed, Petitioner's trial strategy was to question the veracity of McPherson and the Coles. HT 6-8, 17-18. Petitioner's trial counsel chose not to hire an independent ballistics expert, but rather to cross-examine the prosecution's expert regarding the bullet that was found at the scene. HT 7-9. Approximately a week before trial, the prosecution disclosed the existence of a video tape of the scene which had been created by one of the investigating officers. MT 6. Trial counsel did not oppose the introduction of the tape (with the exception of some comments by Mr. Cole which were excised before trial). Petitioner's counsel used the tape in closing arguments to emphasize perceived discrepancies in the prosecution witnesses' versions of the events. JT 463-65. Petitioner chose to testify on his own behalf. JT 381. His testimony differed in many respects from the Coles' and Mr. McPherson's. The prosecutor asked Petitioner several times during his cross-examination whether the other witnesses "were

3

mistaken" or whether their testimony was "false" when their testimony conflicted with Petitioner's version of events. JT 412, 413, 416, 420, 422, 426, 428. Defense counsel objected to this line of questioning once, when the prosecutor did not specify who testified differently than Petitioner. JT 426. The objection was sustained. Id.

Petitioner raised ineffective assistance of counsel as the sole ground for relief in his amended state habeas application. See Doc. 16, Ex. F. He asserted his trial counsel was ineffective in the following ways: (1) failure to call or consult with experts; (2) failure to object during the prosecution's cross-examination; (3) failure to object to late discovery of the video tape; and (4) failure to object to the admission of his prior felony conviction. Petitioner withdrew the fourth claim (the felony conviction) during the state habeas hearing. HT 35-36. The state courts rejected Petitioner's remaining three claims, dismissed his petition, and denied a certificate of probable cause. He now asserts the same three ineffective assistance of counsel claims in his federal § 2254 habeas application.

## DISCUSSION

### A. Standard of Review

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The federal courts are constrained, however by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), to exercise only a "limited and deferential review of underlying state court decisions." Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005) cert. den. 126 S.Ct. 1569, 164 L.Ed.2d 305 (2006). A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court's precedent." Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.C. 1495, 146 L.Ed.2d 389 (2000).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met. Thatsaphone v. Weber,

4

137 F.3d 1041, 1045 (8th Cir. 1998); 28 U.S.C. § 2254(e). A federal habeas court "may not simply disagree with the state court's factual determinations. Instead it must conclude that the state court's findings lacked even fair support in the record." Marshall v. Lonberger, 459 U.S. 422, 432, 103 S.C. 843, 850, 74 L.Ed.2d 646 (1983). A federal habeas court may not issue the writ merely because it concludes the state court applied the clearly established federal law erroneously or incorrectly. Id. at 411, 120 S.C. at 1495. "Rather, that application must also be *unreasonable*." Id. (emphasis added).

The Eighth Circuit has noted federal review of ineffective assistance claims in § 2254 petitions is particularly deferential: "Our review under 28 U.S.C. § 2254 of a state court's application of Strickland is twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel." Nooner v. Norris, 402 F.3d 801, 808 (8th Cir. 2005) cert. den. 126 S.Ct. 2037, 164 L.Ed.2d 794 (2006).

## B.  Ineffective Assistance Of Counsel

The sole ground for relief contained in Petitioner's § 2254 habeas petition is his claim that trial counsel was ineffective in three ways: (1) failure to consult with and call an expert witness at trial; (2) failure to object to cross-examination by the prosecutor; and (3) failure to object to the late discovery of a video tape. To establish an ineffective assistance of counsel claim, Petitioner must (1) establish counsel's representation fell below an objective standard of reasonableness and (2) show the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.C. 2052, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694, 104 S.C. at 2052. The Court must begin by presuming trial counsel was effective, and strategic choices are entitled to great deference. Boyd v. Minnesota, 274 F.3d 497, 502 (8th Cir. 2001). This court's task, therefore, is to determine whether the state court unreasonably applied these well known standards.

### (1)  Failure to Consult/Call an Expert at Trial

In his pro se § 2254 application, Petitioner's first ground for relief explains, "I think if we had our own expert it would of helped cause no gun powder was found on my hands cause no test were done also other facts I can explain better in person." Petitioner's appointed state habeas

5

counsel asserted Petitioner's trial counsel should have consulted with a ballistics expert regarding the prosecution's ballistics report, and should have consulted with and/or called an expert at trial to discuss the possibility of gunpowder residue tests, rather than relying on cross-examination of prosecution witnesses. See Doc. 16, Ex. F. No expert testimony, affidavit or report was offered, however, during the state habeas proceeding.

Petitioner's trial counsel testified at the habeas hearing regarding the expert. He explained he considered, but rejected the idea of hiring a ballistics expert because he could accomplish his goals through cross-examination of the prosecution witnesses. (Specifically, clarifying there was no way to physically determine whether Petitioner shot a gun on the day in question because no residue tests were performed, and no way to match the bullet in the driveway to having been fired from any particular gun, because the gun allegedly used in the incident was never found). HT 18,19. Trial counsel explained he prepared for his cross-examination of the prosecution witnesses by reading treatises which were available in his office. HT 9.

Petitioner's trial counsel cross-examined two witnesses regarding gunpowder residue. JT 360-61, 374-75. Counsel established through cross examination that at the time of Petitioner's arrest, it would have been possible to test his hands to detect whether he had recently fired a gun. Id. Despite this possibility, and despite their knowledge that Petitioner had been accused of firing a gun, the test was not performed. JT 375.

Counsel's cross examination of the prosecution's ballistics expert established the bullet found in the Coles' driveway did not strike sideways or scrape across anything. JT 333. It "possibly" struck straight down. Id. Counsel also established that although the bullet was consistent with a .44 caliber (the type of gun missing from the Cole residence), it was also consistent with a .41 caliber. JT 334. The expert's direct examination established she could not determine how recently the bullet had been fired. JT 332. Petitioner's counsel explained to the jury during closing argument that the location of the bullet in the driveway, along with its trajectory did not fit with the prosecution witnesses's stories about where Petitioner was supposedly standing when the shot was allegedly fired. JT 460-68.

The state habeas court decided trial counsel's failure to hire or consult with an expert was a strategic decision which did not rise to the level of ineffective assistance of counsel. The court cited Strickland, and noted when the claimed error is failure to hire an expert, the Petitioner cannot prevail unless he shows the outcome of his trial was prejudiced. While Petitioner criticized trial counsel's failure to retain an expert, he did not support the criticism with any specific expert testimony or opinions which would have changed the outcome of his trial. See Ashker v. Class, 152 F.3d 863, 876 (8th Cir. 1998); Ellefson v. Hopkins, 5 F.3d 1149, 1150-51 (8th Cir. 1993)(trial counsel's strategy to forego calling expert and rely on cross-examination of prosecution expert deemed not ineffective assistance of counsel). See also Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (petitioner failed to show ineffective assistance because he did not demonstrate how his case was prejudiced by not retaining an expert; "[petitioner] offered no evidence that an . . .expert would have testified on his behalf at trial. He merely speculates that such an expert could be found. Such speculation, however, is insufficient to establish prejudice . . . speculating as to what [an] expert would say is not enough to establish prejudice."). The state court correctly determined that, in the absence of an affirmative showing that relevant testimony by an expert would have exculpated him, he cannot show the requisite prejudice to prevail on an ineffective assistance claim.

### (2) Failure to Object to Cross-Examination

In his second ground for relief, Petitioner asserts his trial counsel was deficient "for failing to object to the state questioning during cross examining of me." Petitioner theorizes his trial counsel's failure to object to cross examination "shows [his] lawyer was not into the case just along for the ride. . ." Petitioner made the same claim in his amended state habeas petition, but was more specific about his dissatisfaction. In his amended state petition, Petitioner asserted trial counsel's failure to object to the prosecutor's repeated inquiries whether other witnesses were "mistaken" or whether their testimony was "false" amounted to deficient performance and was not part of sound trial strategy. See Doc. 16, Ex. F.

Trial counsel explained during the state habeas hearing that he did not object to the prosecutor's cross-examination because Petitioner's strategy at trial was to convince the jury the Coles and Mr. McPherson were not telling the truth. JT 10-11. Counsel believed it was advantageous to Petitioner to be allowed to explain his version of events to the jury as many times as possible. Petitioner was holding up well under cross-examination, and each time the prosecutor

7

asked if the other witnesses were "mistaken" Petitioner had another opportunity for the jury to weigh his testimony. HT 10-11. Counsel ultimately objected to the prosecutor's cross-examination when he believed it was becoming redundant. HT 11. The state habeas courts determined the prosecutor's cross-examination was not improper and not prejudicial to Petitioner. As such, Petitioner's counsel was not ineffective by failing to object. See Doc. 16, Ex. G, p. 10.

Petitioner does not specify in his federal petition to which portion of the prosecution's cross-examination his trial counsel should have objected. It is assumed, however, his federal claim mirrors his state claim. The state court applied the correct standard: to succeed on this claim, Petitioner must show counsel's failure to object constituted deficient performance, and that the deficiency prejudiced his defense. Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998) quoting Strickland, 466 U.S. at 694, 104 S.Ct. at 2052.

The Court has carefully reviewed the trial transcript, and it does not appear the prosecutor's cross-examination was improper under Federal Rule of Evidence 608. Because Petitioner disagreed with the prosecution witnesses, he did not improperly "vouch" for their credibility. See e.g. Maurer v. Minnesota Dept. Of Corrections, 32 F.3d 1286, 1289 (1994). Even assuming the cross-examination was objectionable, trial counsel's decision not to object "fell within the wide range of reasonable professional assistance that is not constitutionally ineffective." Phyle v. Leapley, 66 F.3d 154, 159 (8th Cir. 1995). Additionally, Petitioner has failed to show a reasonable probability that an immediate objection would have resulted in his acquittal. In the absence of such a showing, his ineffective assistance claim cannot succeed. Alidani v. Dooley, 365 F.3d 635, 642 (8th Cir. 2004). The state court's determination that trial counsel's decision to forego objection to the prosecutor's cross-examination did not prejudice Petitioner's case does not constitute an unreasonable application of clearly established federal law.

### (3) Failure to Object to Late Disclosure of Video Tape

Petitioner's third § 2254 ground for relief is that his trial counsel was ineffective for "failing to object to late discovery of a video tape." Petitioner asserted this same claim in his amended state habeas petition. See Doc. 16, Ex. F.

8

Petitioner's trial counsel discussed the video tape during the motions hearing which was held on February 2, 2001 (five days before trial began on February 7, 2001). Counsel for the prosecution admitted the tape was provided "relatively late" but explained he gave a copy to defense counsel as soon as it came to his attention. MT 5. The tape was created by a Deputy Sheriff who videotaped the scene of the alleged incident, with narration by Mr. McPherson and comments by the Coles. MT 5. Petitioner's trial counsel did not object to the use of the video at trial, with the exception of Mr. Cole's comments. The objectionable comments were edited before trial. MT 5-6.

Trial counsel discussed the tardily disclosed video tape during state habeas hearing. HT 22-23. He explained that he used the video tape during his cross-examination of Mr. McPherson at trial. HT 23. Counsel used the video at trial to clarify that the prosecution witnesses's version of where Petitioner was allegedly standing when he fired the gun was inconsistent with where the bullet was found in the Coles' driveway. HT 24, JT 278-279. Counsel also referred to the video in his closing argument to bring attention to the inconsistencies between the prosecution witnesses' versions of the events, and McPherson's level of intoxication. JT 461-462. Counsel played a brief portion of the video during closing argument to (1) question likelihood that the Petitioner could have fired the bullet found in the driveway from the position claimed by the prosecution; and (2) and to question McPherson's credibility. JT 463-464.

The state habeas court determined trial counsel's decision to forego objection to the late disclosure of the video tape was a "sound trial strategy." The Court noted counsel's decision not to object was based on his determination the the tape was actually advantageous to the defense. The state habeas court agreed and concluded "prejudice cannot be found where the evidence is favorable for the defense." See Doc. 16 Ex. G, p. 11. The state court also concluded Petitioner failed to show the result of the trial would have been different if the video had not been received into evidence. Id.

The state habeas court correctly identified the two-part Strickland test as the law applicable to Petitioner's ineffective assistance of counsel claim regarding the late disclosure of the video tape. See Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005) (to succeed on an ineffective assistance claim, Petitioner must show counsel's performance was deficient, and that he was prejudiced by counsel's incompetence; prejudice must be shown by a reasonable probability that but for counsel's mistakes, result would have been different.). Because the state court applied the proper legal

9

standard, the only issue to be resolved is whether the state court's application was unreasonable. Id. Regarding the late disclosure of the video tape, Petitioner explains in his § 2254 application, "we could of used the time to explain more of the reason of the video tape." See Doc. 1 at p.6. This, however, is insufficient to overcome the presumption that trial counsel's strategy to use the tape to discredit the prosecution witnesses was not sound trial strategy, or that but for the admission of the tape, the result would have been different. See also Duckett v. Mullin, 306 F.3d 982, 999-1000 (10th Cir. 2002) cert. den. 538 U.S. 1004, 123 S.Ct. 1911, 155 L.Ed.2d 834 (2003) (admission of police-made video tape of bloody crime scene was not so unduly prejudicial as to render proceedings against habeas petitioner fundamentally unfair). The state habeas court did not unreasonably apply clearly established federal law.

## CONCLUSION AND RECOMMENDATION

Petitioner's habeas corpus claims were adjudicated on the merits after an evidentiary hearing in state court, where he was represented by court-appointed counsel. Petitioner has failed to satisfy his burden of rebutting the presumption of correctness of the state court's adjudication by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). The state court determination was not contrary to, nor did it involve an unreasonable application of clearly established federal law (Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)), and was a reasonable determination of the facts in light of the evidence presented in the state habeas proceeding. See 28 U.S.C. § 2254(d). It is therefore respectfully RECOMMENDED to the District Court that Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

Petitioner has failed to make a "substantial showing of the denial of a constitutional right." It is therefore also respectfully RECOMMENDED that a certificate of appealability should not be issued in Petitioner's case. 28 U.S.C. § 2253(c)(2). Although 28 U.S.C. § 2253(c)(2) has been found to be "only a modest standard," Petitioner has not shown that "the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement or to proceed further.'" Randolph v. Kemna, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (citations omitted).

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990)
Nash v. Black, 781 F.2d 665 (8th Cir. 1986)

Dated this 6th day of Sept, 2006.

BY THE COURT:

*/s/ John Simko*
John E. Simko
United States Magistrate Judge

ATTEST:

JOSEPH HAAS, CLERK

BY *Jackie Meiserhiemer*
(SEAL)   DEPUTY